## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 2:16cr163** |
| | ) | |
| **JORDAN LEE ADAMS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States of America, by Dana J. Boente, United States Attorney, Alyssa K. Nichol, Special Assistant United States Attorney, and David Layne, Special Assistant United States Attorney, offers this position paper regarding the sentencing factors stated in 18 U.S.C. § 3553(a). The government has no objections to the content of the Presentence Investigation Report (PSR). According to the PSR, the advisory guidelines under the United States Sentencing Guidelines (U.S.S.G. or "Guidelines") call for 360 months' imprisonment. In this case, the Guidelines sentencing range is limited by the statutory maximum term of imprisonment. Based on the heinous nature of the offenses, the defendant's history, characteristics and related conduct, the undersigned respectfully recommends a Guidelines sentence of 360 months' imprisonment. Per his plea agreement, the defendant has agreed to cooperate with the government, but the time is not yet ripe to address any cooperation that the defendant may provide. In support of its position, the government states as follows:

### I.  BACKGROUND

On January 17, 2017, pursuant to a plea agreement, the defendant pleaded guilty to a one-count criminal information charging him with Production of Child Pornography in violation of 18 U.S.C. § 2251(a). At his plea hearing, the defendant stipulated to the information contained

in an attendant Statement of Facts, signed by the defendant and by the government.   By stipulating to that Statement of Facts, the defendant agrees that he is responsible for the sexual abuse of four different girls, on numerous occasions, and over a period of years.   The girls' ages range from 14 years old to approximately 16 years-old.

ADAMS is scheduled to be sentenced on Thursday, April 13, 2017.   At that time, the government requests the Court to consider whether ADAMS, the victimizer of at least four girls, should have a chance to victimize again and what sentence will be sufficient to deter other offenders from committing similar crimes.

**A.      The Discovery of Child Pornography**

In March 2015, ADAMS was an active duty U.S. Navy sailor, serving on the USS Theodore Roosevelt aircraft carrier.   B.R., a female sailor, made a report to NCIS that ADAMS had sexually assaulted her.   During the ensuing investigation, NCIS searched ADAMS' personal Sony Vaio laptop, which is now the subject of the forfeiture provision in the criminal information in this case.   On ADAMS' laptop, NCIS discovered a folder titled simply "under."   In that folder, NCIS discovered 998 images and videos of suspected or known child pornography.   ADAMS catalogued some of the child pornography into sub-folders, which he titled with the names of individual victims.   Those victims include the victims referenced in the Statement of Facts. Although the defendant identified them by their full names when he catalogued them, the government will refer to them by their initials in the argument below.   In addition to known child pornography, the defendant possessed hundreds of images of apparent child pornography depicting minor victims who have yet to be identified.

**B.    K.S.**

The Statement of Facts describes ADAMS' actions with regard to K.S. in detail.    ADAMS created several videos of himself engaging in sexual acts with K.S. in 2011 and 2012, when K.S. was 14 years old and ADAMS was approximately 21-22 years old.    In those videos, K.S. at times appears to be in pain, tries to push ADAMS away, and tells him to stop having sex with her.    At one point in one of the videos, as he is penetrating her, ADAMS directs 14-year-old K.S. to refer to herself as a "whore," which she does.    Even after these encounters, ADAMS ensured that K.S. would be available and loyal to him by making her feel special.    After he became aware that NCIS was investigating him, he reached out to her to persuade her not to cooperate with law enforcement.    In that conversation, it was apparent that ADAMS had manipulated K.S. into believing that she mattered to him.    She states she was "jelly" [colloquial term meaning jealous] that ADAMS had engaged in sexual acts with another female, and goes on to say that she thought he only "took videos" with her.    Clearly, K.S. believed that ADAMS cared about her.    But ADAMS betrays his true motivation later in the conversation when K.S. tells him that she had finally turned 18, and he replies, "…damn you're legal now, guess I need to find someone younger hahaa jk."

**C.    K.B.**

ADAMS used K.B. to produce child pornography in approximately 2010, when ADAMS was approximately 20 years old.    At that time, ADAMS already had a reputation of being someone who would "go after" younger girls.    ADAMS engaged in sexual acts with K.B. when she was approximately 15 years old and he was 18 years old.    Unlike the other three victims, K.B. does not describe her initial encounter with ADAMS as forceful.    She sent him nude pictures of herself at his request.    He maintained those pictures in the "under" folder on his computer,

catalogued alongside pictures of his other victims.   ADAMS possessed those images at the outset

of the investigation, in 2014.

**D.     E.S.**

ADAMS produced child pornography by engaging in sexual acts with E.S. in

approximately 2012.   This occurred around the same time he was producing child pornography

by engaging in sexual acts with K.S.   ADAMS met E.S. when he was dating older sister.   E.S.

was approximately 14 years old and ADAMS was approximately 20 years old.   Before long, he

shifted his attention from the older sister to E.S.   He asked E.S. for sexually explicit images of

herself.   She refused.   Eventually, ADAMS engaged in sexual acts with E.S.   E.S. describes her

first sexual encounter with the defendant as painful and forceful.   She states that he held her hands

above her head as he took nude photographs of her and persisted in penetrating her vagina with his

penis as she told him to stop.   Even after this first, explicit non-consensual sexual encounter,

ADAMS was able to convince E.S. to engage in subsequent sexual encounters with him, one of

which occurred in a shed.   ADAMS recorded the sexual encounter in the shed in several video

clips.

**E.     C.T.**

In the case of C.T., ADAMS went beyond producing images of child pornography and

actually distributed child pornography that he had produced.   When C.T. was 15 years old,

ADAMS engaged in vaginal sex with her, despite her telling him "no" multiple times and saying

that she was a virgin and not ready to have sex.   ADAMS pinned C.T. on the floor and held her

hands over her head as he penetrated her.   After this, her first sexual encounter, he dropped her off

in darkness and drove away, told her he would hurt her if she told anyone what happened, and left

her to cry as she walked to her home.   As with K.B. and E.S., ADAMS was able to convince C.T.

4

to continue engaging in sexual acts with him.   ADAMS convinced C.T. to continue seeing him by promising her that they would date.   After breaking her down, he made her feel special.

After convincing C.T. to keep meeting with him, ADAMS took several nude photographs of C.T. in the back of a car.   C.T. was approximately 16 years old and ADAMS was approximately 20 years old at the time.   ADAMS uploaded these sexually explicit images of C.T. to "Wayne County Nudes" an internet social media application.   C.T. realized that sexually explicit images of her had been distributed on the internet when a stranger sent her an internet message, seeking more images and threatening to distribute the existing images further if she refused.   C.T. reached out to ADAMS to tell him what was happening.   He suggested that it wouldn't be so bad for C.T. to simply comply with the sextortion he had caused.

C.T. has submitted a victim impact statement to the Court.   She tells the court that ADAMS' actions left her ashamed, damaged, and in pain.   She describes being haunted by her sexual encounters with ADAMS.   She is still "sometimes scared to be touched."   C.T.'s statement dispels any notion that ADAMS engaged in relationships with these minors as if they were his equals.   These relationships were about power.   ADAMS left C.T. broken.

**F.    Other Child Pornography**

In addition to the child pornography he produced, the defendant also possessed at least twelve images of child pornography depicting ten victims who had been previously identified by the National Center for Missing and Exploited Children.   If it was not already abundantly clear that his victims' young age brings sexual gratification to ADAMS, his possession of additional child pornography should put any lingering concern to rest.   ADAMS' crimes were not misguided but sincere romantic relationships.   ADAMS specifically targeted young girls because he is aroused by young girls.

5

G.     **Other Relevant Conduct**

The Presentence Investigation Report addresses conduct outside of the offense of conviction and Statement of Facts that bears on the Court's decision at sentencing.   Over and over again, the defendant has shown his true colors.   The defendant's mother told NCIS that, as a young teenager, he was caught peeking into a young stepsister's room.   She also told NCIS that, years later, he asked a minor half-sister to send him nude photographs of herself.   During the course of the investigation, NCIS discovered a video of a sexual encounter in which a female asks the defendant to "f--- (her) gently" because he is hurting her and the defendant replies, "I don't care, shut up. I paid for it. I'm going to get what I want. I'm going to bust it all over your face too." The defendant is also facing multiple charges at a pending U.S. Navy court-martial, which include charges that the defendant either sexually assaulted adult shipmates or videotaped consensual sexual encounters without his partner's permission.   Again and again, ADAMS has proven himself to be someone who has absolutely no regard for the law as it pertains to sexual offenses or for his sexual partners themselves.

## II. STANDARDS GOVERNING SENTENCING

In three recent opinions, the Supreme Court pronounced a new sentencing regime.   In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court rendered the Sentencing Guidelines purely advisory, but emphasized that a sentencing court must consider both the Guidelines and the 18 U.S.C. § 3553(a) factors when making a sentencing decision.   *Id.* at 264. The Supreme Court reaffirmed this principle in *United States v. Kimbrough*, 128 S. Ct. 558 (2007), emphasizing that the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence.   *Id.* at 564.   Finally, in *Gall v. United States*, 128 S. Ct. 586 (2007), the Supreme Court instructed that the sentencing court

6

should calculate the Sentencing Guideline range, permit the government and the defendant Aan opportunity to argue for whatever sentence they deem appropriate, consider all of the § 3553(a) factors, and finally pronounce a sentence taking into account all of the relevant factors.   *Id.* at 596-97.   The *Gall* Court further instructed that, in the event that the sentencing court decides to impose a variance sentence, the court must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.   *Id.* (noting that a major departure should be supported by a more significant justification than a minor one.). Applying these standards, the Fourth Circuit has concluded that a sentencing court must: (1) properly calculate the Guideline range; (2) allow the parties to argue for the sentence they deem appropriate and determine whether the § 3553(a) factors support the sentences requested by the parties; and (3) explain its reasons for selecting a sentence.   *United States v. Simmons*, 269 Fed. App'x 272 at *1 (4th Cir. 2008) (*citing United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007)).

## III.   FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider the nature and circumstances of the offense as well as the history and characteristics of the defendant. The Court should impose a sentence that reflects the seriousness of the offense, and the need to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes, and to provide the defendant with adequate rehabilitation or medical treatment.

### A.   Nature and Circumstances of the Offense

The defendant engaged in the serial sexual exploitation and extortion of numerous girls over the course of several years (that we know of with certainty).   The defendant manipulated the

girls he targeted. He gained access to them through the internet, through school, and, in one case, by dating a victim's older sister. He then coerced them to produce child pornography for his benefit, at times using force, some form of restraint, or persisting in sexual acts over their protests.

In addition to actually engaging in sexual acts with these underage girls, ADAMS manipulated these girls into abusing themselves for his pleasure- he made them participate in their own victimization. It is telling that ADAMS followed a similar pattern in his victimization of K.S., C.S., and C.T. All three of those victims describe a forceful initial sexual encounter. All three describe ADAMS engaging in sexual intercourse with them over their protests. Yet, the defendant was able to convince all three of them to come back and engage in sexual acts with him on later occasions. ADAMS broke these young girls down and then convinced them that he loved them, that they were special to him. In reality, he carefully catalogued them in the "under" folder on his personal laptop, so they would all be available for his gratification at whim.

Physical and sexual trauma and abuse of children, when combined with a psychological element of abuse, is extremely dangerous.

> Psychological maltreatment that occurred alongside physical or sexual abuse was associated with significantly more severe and far-ranging negative outcomes than when children were sexually and physically abused and not psychologically abused, the study found. Moreover, sexual and physical abuse had to occur at the same time to have the same effect as psychological abuse alone on behavioral issues at school, attachment problems and self-injurious behaviors, the research found."

*Childhood Psychological Abuse as Harmful as Sexual or Physical Abuse*, American Psychological Ass'n (http://www.apa.org/news/press/releases/2014/10/psychological- abuse.aspx).

However, there was no one responsible for this abuse except ADAMS. These girls' lives have been forever changed because ADAMS has absolutely no regard for anyone but himself and

8

his pernicious need to control and manipulate.   The Court's sentence must take this into consideration in its fashioning of a sentence.

## B.  Defendant's Criminal History

The government submits that the defendant's criminal history is underrepresented.   On paper, the defendant was a model citizen.   But that was never the whole story.   The Statement of Facts only accounts for four victims, but the evidence shows that ADAMS has manipulated more victims over a period of years.   His own mother volunteered to an NCIS agent that he showed escalating signs of predatory behavior when he was 13 or 14 years old, when he was caught peeking into a stepsister's bedroom.   Later, when he became an adult, he solicited a half-sister for naked photographs.   He is currently facing charges at court-martial for the sexual assaults of female shipmates.   His long history of predatory behavior is not considered in his criminal history.

## C.     Need to Deter Future Criminal Conduct and to Protect the Public

ADAMS' sentence needs to accomplish the twin goals of deterring the defendant from engaging in future criminal conduct and to protect the public.   ADAMS has shown that he is the epitome of the type of person from which the public needs to be protected.   ADAMS targeted young girls because of their age.   He abused them, groomed them, and made them think they mattered to him, all the while cataloguing them and saving them so that he could gratify himself at his convenience.   ADAMS was so clever and manipulative that he went for years before one young female sailor actually reported him to NCIS, which led to the discovery of the cache of home-made child pornography on his laptop.

The government submits that, based on ADAMS' criminal past, nothing would have stopped ADAMS short of his arrest.   The government does not believe that ADAMS is able to

control himself.   The government avers that ADAMS will continue to use and abuse others should he have any chance to do so.   Due to this risk, adequate punishment, deterrence and protection of the public all call for a severe sentence for ADAMS' offenses.   18 U.S.C. § 3553(a)(2).

**D.   Need to Provide Treatment to Defendant**

Due to the nature and duration of the defendant=s crimes, defendant should be ordered to participate in a sex offender and mental health treatment program while incarcerated.

**E.      Need to Avoid Unwarranted Sentencing Disparities**

ADAMS' actions related to the crimes of conviction and other relevant conduct support a severe sentence of imprisonment.   Similarly situated defendants in our Court have received lengthy sentences for production of child pornography.   For example:

| Case Name/Number | No. of Victims | Plea/Trial | Sentence |
|---|---|---|---|
| U.S. v. Roberto Darden 4:11cr52 | 1 (13 years old) | Plea to Production of Child Pornography | 720 months |
| U.S. v. John Scott 2:13cr14 | 3 (10-14 years old | Plea to Production of Child Pornography | 600 months |
| U.S. v. Michael Sechrist 2:13cr30 | 1 (7 years old) | Plea to Production of Child Pornography | 327 months |
| U.S. v. Abimael Cardenales 2:12cr2 | 2 (10-15 years old) | Plea to Production of Child Pornography | 720 months |
| U.S. v. Robert Harold Scott 2:13cr164 | 7 (1 to 5 years old) ( no hands on contact, all through the Internet) | Trial- Production of Child Pornography, Enticement, Obstruction | Life |
| U.S. v. Scottie Lee Martinez 2:10cr122 | 3 (ages 5-14 years-old) | Plea to Production of Child Pornography | 960 months |
| U.S. v. Daniel Case Harris | 9 (12-17 years old) | Trial- Production, Receipt, and Transportation of Child Pornography, | 600 months |

| | | Enticement | |
|---|---|---|---|

Each of these examples involve different circumstances and different individual defendants.   Still, ADAMS' punishment should be no less severe than those of the similarly-situated offenders referenced above.   Only one defendant of those referenced, *Sechrist*, received a sentence lower than the sentence that the government is seeking in this case. Defendant *Sechrist*'s actions were horrible, and the government does not seek to diminish them in any way, but it is worth noting that he victimized only one child.   ADAMS victimized four minors by using them to produce child pornography.   He also distributed the images he produced of C.T., and possessed images of at least ten other minor victims.

In particular, the defendant's case bears comparison to *United States v. Daniel Chase Harris*.   The defendant in *Harris* was a military officer who produced child pornography by convincing at least nine teenage girls to send him nude depictions of themselves via the internet. Like *Harris*, ADAMS served in the U.S. Navy and appeared to be a model citizen to those who knew him.   Unlike *Harris*, who did not actually engage in contact offenses with his victims, ADAMS engaged in sexually explicit acts with his young victims, at times forcefully, and produced child pornography by creating visual depictions of those sexual acts.

## IV. CONCLUSION

For the reasons stated above, the government asks the Court to impose a sentence of imprisonment of 360 months of imprisonment and lifetime supervised release.

DANA J. BOENTE
UNITED STATES ATTORNEY

By: _____

11

Alyssa K. Nichol
Special Assistant United States Attorney
David Layne
Special Assistant United States Attorney
Attorneys for the United States
United States Attorney=s Office

101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number:   757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: alyssa.nichol@navy.mil

## **CERTIFICATE OF SERVICE**

I certify that on April 6, 2017, I electronically filed a copy of the foregoing with the Clerk

of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the

following:

Greg D. McCormack, Esquire
611 Lynnhaven Parkway
Suite 100
Virginia Beach, Virginia 23452

I further certify that on April 6, 2017, I caused a true and correct copy of the foregoing to

be sent to the following:

Leah D. Greathouse
United States Probation Officer
600 Granby Street
Norfolk, VA 23510

Alyssa K. Nichol
Special Assistant United States Attorney
David Layne
Special Assistant United States Attorney
Attorneys for the United States
United States Attorney=s Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Office Number:   757-441-6331
Facsimile Number: 757-441-6689
E-Mail Address: alyssa.nichol@navy.mil